■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID T. PELKEY, Appellant. — Appeal from a judgment of the County Court of Madison County (Kepner, Jr., J.), rendered March 28, 1983, upon a verdict convicting defendant of the crime of arson in the third degree. ¶ On May 2, 1982, a 1975 Oldsmobile automobile owned by Dawn Haskell was taken from where she had parked it and was later found gutted by fire along the bank of the Chittenango Creek in Madison County. After conducting a preliminary investigation of the incident, the authorities believed that Paul Haskell, the then separated husband of Dawn Haskell, was involved and that defendant may have provided some type of transportation for him. ¶ On the afternoon of September 2, 1982, the police interviewed defendant in a personnel office at his place of work. Defendant was offered immunity for any information he could give concerning the destruction of the vehicle. He declined the offer and stated that he knew the vehicle had been destroyed but had no knowledge of the incident. Defendant also said that he had been to the bar where the auto had been stolen many times before. He stated that he was once there with Paul Haskell, that they had seen Dawn Haskell there, and that the couple had an argument. When the officers asked him to make a sworn written deposition of what he told them, defendant stated

that he was willing to talk and co-operate with them at his home or another place, but not at work. He also stated that he would not sign anything without first consulting an attorney. ¶ The officers then left and interviewed Paul Haskell. Later that day, they returned to defendant's place of work, arrested him for third degree arson and advised him of his *Miranda* rights, which he said he understood. ¶ On the way to the State Police station, defendant asked if Paul Haskell had been arrested. In response, an officer gave him Haskell's affidavit to read. At the State Police station, he was booked and arrangements were made in his presence for his arraignment. Upon being shown Haskell's affidavit again, defendant made incriminating oral admissions. He was later indicted and thereafter a *Huntley* hearing was held to determine whether defendant's oral statements to the police were admissible. The suppression court ruled the statements to be admissible, finding that defendant was not in custody on the first occasion and that no *Miranda* warnings were necessary at that time. The court found that after his arrest, defendant was given his *Miranda* warnings and that he understood them. The court also concluded that based upon defendant's testimony, his earlier statement that he would not sign anything without first consulting an attorney was made, not because defendant was concerned about getting an attorney, but because he did not want to be questioned at work and wanted to avoid the embarrassment of police contacts there. Defendant was convicted of arson in the third degree after a jury trial. He was sentenced to one to three years of imprisonment. This appeal followed. ¶ There should be an affirmance. The trial court correctly ruled that defendant's oral statements were voluntarily made and thus admissible in evidence against him. The record supports the finding that defendant understood his rights and waived them voluntarily after his arrest. ¶ Defendant's first contention, that at the time of his arrest the police function had shifted from investigatory to accusatory making his right to counsel indispensable in counsel's absence, is rejected (see *People v Samuels,* 49 NY2d 218, 222; *People v Cunningham,* 49 NY2d 203, 208; *People v Settles,* 46 NY2d 154, 163). Defendant points to the actions of the police officers in making a call to the available magistrate to set up the time for his arraignment in his presence, in typing up the felony complaint and in showing the complaint and the supporting affidavit of Paul Haskell to him, and argues that they demonstrate that the arrest was not made merely for investigatory purposes, but rather for the sole purpose of initiating criminal proceedings against him. He, therefore, argues that the distinction between a warrantless arrest and one made pursuant to a warrant is arbitrary. He claims that the accusatory process had thus begun and defendant's right to counsel had "indelibly attached". However, this court has specifically rejected the contention that the right to counsel immediately attaches upon a warrantless arrest (*People v Mathis,* 77 AD2d 720). The facts of the instant case do not require a different holding (see *People v Walker,* 87 AD2d 725; *People v Mathis, supra*). Here, the actions taken by the police officers in arresting, booking and processing the papers necessary for his arraignment were acts done in conformity with the dictates of statutory law (CPL 140.20, subd 1) requiring that an arraignment of a defendant be done without unnecessary delay. Merely because the arrangements were made in the presence of defendant and the accusatory documents were shown to him does not mean that defendant acquired an "indelible right" to counsel. The police were acting in accordance with the law and not in violation of any of defendant's rights. ¶ Defendant also asserts that the procedure followed by the police in trying to obtain an incriminatory statement from him before arraignment was an attempt to circumvent his constitutional rights such as occurred in the case of *People v Albro* (76 AD2d 181, affd 52 NY2d 619). We disagree. The cases are factually distinguishable, since in the instant case it took only

two hours and 45 minutes to arrest, process and arraign defendant. Such a delay cannot be said to be unreasonable (see *People v Mathis, supra* [a two and one-half hour delay from booking to waiver of rights]; see, also, *People v Walker, supra*). ¶ Defendant's next contention, that his statement that he would not sign anything without his attorney being present was not only a formal request for an attorney but also an acknowledgment of his need for legal assistance (see *People v Skinner,* 52 NY2d 24), is also without merit. The suppression court's finding to the contrary is supported by the record and we see no reason to disturb that court's factual finding (*People v Ellis,* 83 AD2d 652). Further, defendant was not in custody at the time and his statement concerning an attorney was not an unequivocal assertion that he was requesting the assistance of counsel (see *People v Johnson,* 55 NY2d 931, revg on dissenting opn below 79 AD2d 201, 203-204). ¶ Lastly, defendant's claim that the sentence imposed was excessive and an abuse of the court's discretion since he received a greater sentence than Haskell, who testified against him and received probation, is rejected. The matter of sentencing rests within the discretion of the sentencing court and should not be disturbed unless there has been a clear abuse of that discretion (see *People v Campbell,* 55 AD2d 688; *People v Dittmar,* 41 AD2d 788). No such clear abuse of discretion has been shown here. ¶ Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.